## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

|  |  |  |
|---|---|---|
| AUSTIN PICCOLO, | § § § | Civil Action No.  5:23-cv-19 |
| Plaintiff, | § § |  |
| v. | § § | **COMPLAINT** |
| NAVY FEDERAL CREDIT UNION, | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § |  |

### INTRODUCTION

1.    This action arises out of Defendant Navy Federal Credit Union's (hereinafter "Defendant") violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

### JURISDICTION

2.    Jurisdiction of this Court is proper pursuant to 15 U.S.C. § 1681, 28 U.S.C. § 1331.

3.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct in question occurred in this District, Plaintiff resides in this District, and Defendant transacts substantial business in this District.

## PARTIES

4.    Plaintiff, Austin Piccolo, (hereinafter 'Plaintiff'), is a natural person who resides in the City of Lubbock, County of Lubbock, State of Texas, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

5.    Defendant, Navy Federal Credit Union (hereinafter "Defendant"), is a federal credit union doing business in Virginia with a principal place of business located at 820 Follin Lane SE, Vienna, Virginia 22180.

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

6.    Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general. Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions. *See* Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

7.    Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine public confidence, which is essential to the continued functioning of the banking system. 15 U.S.C. § 1681(a)(1).

8.    The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S.

47, 52 (2007).

9.    The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act. Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. *See* Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

10.    Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information. *Id.* (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

11.    Congress considered inaccurate and misleading information to be the most serious problem. *Id.*

12.    The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected.  *Id.* (citing 15 U.S.C. § 1681a(d)).

13.    An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

14.    Furthermore, in 1996, Congress, in an effort to increase the "accuracy and

integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act. The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes. These provisions were originally scheduled to sunset in 2003 but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003. *See* Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92. (Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf).

## FACTUAL ALLEGATIONS

15.    In early September 2022, Plaintiff checked his Discover credit card billing statement and noticed that his FICO credit score dropped from 779 to 526.

16.    Immediately after, Plaintiff requested his credit reports from the three major credit reporting bureaus Trans Union, Experian, and Equifax.

17.    Plaintiff began reviewing his credit reports and noticed an account with Defendant with an overdue balance of $7,539.

18.    Plaintiff's identity apparently was stolen and on January 25, 2022, used to fraudulently open a credit account (406095XXXXXXXXXX) in Plaintiff's name with Defendant in Merrifield, Virginia.

19.    Plaintiff has never been to Virginia and did not open the account identified herein.

20.    Moreover, Plaintiff does not and has never lived in Georgia.

4

21.    On September 13, 2022, Plaintiff called Defendant and all three credit reporting bureaus to notify them of the fraudulent account and attempted to have the fraudulent tradeline removed from his credit report.

22.    Plaintiff has learned that the fraudulent account statements were being sent to an address of 120 M Street in Thomaston, Georgia.

23.    Despite notifying Defendant that the account was fraudulent, Defendant continued to report the account, beginning in 406095, on Plaintiff's credit profile.

24.    On September 16, 2022, Plaintiff filed a complaint with the FTC, report number 151740151, against Defendant for the continued reporting of the fraudulent account on Plaintiff's credit profile.

25.    The dispute was received by the FTC and forwarded on to the national credit reporting agencies Trans Union LLC, Equifax Information Services LLC, and Experian Information Solutions Inc., who each in turn forwarded the dispute to Defendant pursuant to 15 U.S.C. § 1681i.

26.    On September 28, 2022, Plaintiff received a response from the credit reporting agencies stating Defendant verified the disputed information as accurate.

27.    Defendant failed to conduct a reasonable investigation and verified the fraudulent account ending in 1462 as belonging to Plaintiff, in violation of 15 U.S.C. 1681s-2(b).

28.    On November 2, 2022, Plaintiff again disputed the false and fraudulent account with the three credit reporting agencies pursuant to 15 U.S.C. § 1681i.

29.    The credit reporting agencies then communicated Plaintiff's dispute directly to Defendant.

30.    For the second time, Defendant failed to conduct a reasonable investigation and verified the fraudulent account beginning in 406095 as belonging to Plaintiff, in violation of 15 U.S.C. 1681s-2(b).

31.    Plaintiff continued his dispute campaign and attempted to clear his name and credit profile by communicating directly with Defendant.

32.    However, as of the date this Complaint was filed Defendant refused to cease reporting this account as belonging to him.

33.    To this end, Defendant violated 15 U.S.C. §1681s-2(b) when it received the notification of disputes from the credit reporting agencies concerning Plaintiff's disputed account and failed to conduct a reasonable investigation and failed to delete the fraudulently opened account that did not belong to Plaintiff and failed to update the reporting to show that the account was "disputed."

34.    As a result of Defendant's inaccurate reporting to the credit reporting agencies, Plaintiff has suffered emotional distress, embarrassment, frustration, a distraction from school, loss of sleep, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

35.    Plaintiff applied for credit in January of 2023 and was denied a Cabela's credit card due to the false and adverse information Defendant is reporting about him.

36.    Plaintiff now is fearful to seek credit for a residence as his credit score has been adversely impacted by the false and derogatory credit reporting of Defendant.

37.     Moreover, Plaintiff is concerned that his employer will review his credit report and find the false and derogatory information about him being reported by Defendant and that it will negatively impact his relationship with the eomployer.

38.     Plaintiff is entitled to attorney's fees and costs from Defendant pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

## TRIAL BY JURY

39.     Plaintiff is entitled to, and hereby demands, a trial by jury.  US Const. Amend. VII; Fed. R. Civ. P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 *et seq.*

40.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

41.     Defendant violated 15 U.S.C. § 1681s-2(b) on multiple occasions by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it and documentation provided by Plaintiff, and failing to update and/or remove the inaccurate tradeline or, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Codes) Code to "XB."

42.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered actual damages not limited to out-of-pocket expenses, detriment to his credit rating, emotional

7

distress, embarrassment, mental anguish, anxiety, and humiliation in an amount to be determined at trial.

43.    Defendant's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

44.    Alternatively, Defendant's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

45.    Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- Actual, statutory and punitive damages, and costs and attorneys' fees for Defendant's violations of the FCRA, pursuant to 15 U.S.C §§ 1681n,1681o, and 1681s, in an amount to be determined at trial;

- Actual damages, costs and attorney's fees for Defendant's credit defamation; and

- For such other and further relief as the Court may deem just and proper.

Dated this 25th day of January 2023.

Respectfully submitted,

By: s/Kevin D. Green_____
Kevin D. Green
*Attorney-in-Charge*
Texas Bar No.: 00792544
LAW OFFICE OF KEVIN GREEN
6244 E. Lovers Lane
Dallas, Texas 75214
Telephone: (512) 695-3613
kevin@consumerjusticecenter.com

Thomas J. Lyons, Jr., Esq.
MN Attorney I.D. #249646
Carter B. Lyons, Esq.
MN Attorney I.D. #:  0403655
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
Facsimile: (651) 704-0907
tommy@consumerjusticecenter.com
carter@consumerjusticecenter.com
*(Pro Hac Vice to be filed)*

***ATTORNEYS FOR PLAINTIFF***

## **CERTIFICATE OF SERVICE**

On January 25, 2023, I filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas.  I hereby certify that I have served the document on all counsel or parties of record in a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

s/Kevin D. Green